Eastern District of Kentucky
**FILED**
DEC 11 2018
AT ASHLAND
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN ~~CENTRAL~~ DIVISION
ASHLAND

CRIMINAL ACTION NO. 0:18-CR-08-S-DLB

UNITED STATES OF AMERICA            PLAINTIFF

V.            **PLEA AGREEMENT**

MARK S. LOCKWOOD, JR.,            DEFENDANT

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Count 1 of the Superseding Indictment, charging a violation of 21 U.S.C. § 846, conspiracy to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance. Pursuant to Rule 11(c)(1)(A), the United States will move at sentencing to dismiss Counts 2, 5, & 6 and the original Indictment.

2. The essential elements of Count 1 are:

    (a) First, that two or more persons formed, reached, or entered into an agreement or understanding to distribute a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance;

    (b) Second, that at some time during the existence or life of the agreement or understanding, the Defendant knew the purpose of the agreement and deliberately joined the agreement or understanding; and

    (c) Third, the amount of methamphetamine attributable to the Defendant as a result of his own conduct or the conduct of others reasonably foreseeable to him was 50 grams or more.

3. As to Count 1, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

(a) On March 16, 2018, the Morehead Police Department responded to a 911 call from the Days Inn Motel in Rowan County, Kentucky. The caller advised that a male and female subject were involved in an altercation, that the male subject pointed a gun at the female, and the male subject left the area in a Black Lincoln Navigator with Ohio tags HHT9297. While en route to the scene, Officer Joshua Ison observed a vehicle matching the caller's description. Officer Ison made a U-turn to initiate a traffic stop on the vehicle. Lockwood, the driver, accelerated and made a reckless turn into a parking lot. The vehicle continued a bit further until it came to a dead end. Cantrell, the backseat passenger, then exited the vehicle and began to flee on foot. Officer Ison drew his pistol and ordered the individual to "Stop! Show me your hands! Get on the ground!" Cantrell ignored Officer Ison's orders, turned back toward the vehicle, jumped in the back passenger seat, and appeared to move things around in the back seat.

(b) Lockwood, Cantrell, and the front seat passenger, Jessica DeBarr were removed from the vehicle. Officers seized $640 in mostly small bills from Lockwood's front pocket and two baggies of suspected methamphetamine from Lockwood's person. In the vehicle, officers located a pistol box in the front passenger cargo area. In the backseat where Cantrell had been sitting, officers located a fully loaded 9mm Taurus Pistol in close proximity to a bag containing a large quantity of suspected methamphetamine. An additional bag containing a large quantity of suspected methamphetamine was located in the backseat cargo area near a box of ziplock bags. Officers also executed a search warrant at Lockwood's room at the Days Inn, where they located a small quantity of suspected methamphetamine. All three defendants admitted to having been at the Days Inn, to an argument occurring at that location with another female, and to leaving that location together prior to being stopped by Officer Ison.

(c) All of the suspected narcotics were sent to Kentucky State Police Forensics Laboratory for further analysis and were confirmed to be 418 grams of methamphetamine and 7.1 grams of fentanyl. Methamphetamine and Fentanyl are Schedule II controlled substances.

(d) The quantity of methamphetamine seized is consistent with trafficking, not personal use. Much of the methamphetamine is pre-measured and packaged for

sale in approximately one-ounce increments. The packaging of these baggies matches the packaging materials located in the purse belonging to Debarr.

(e) Lockwood admits that he conspired with Debarr and Cantrell to package and distribute methamphetamine throughout Rowan County, Kentucky and surrounding areas. Lockwood further admits that Cantrell possessed the firearm and attempted to conceal that firearm in the backseat cargo area during the traffic stop.

4. The statutory punishment for Count 1 is imprisonment for not less than 5 years and not more than 40 years imprisonment, a fine of not more than $5,000,000, and a term of supervised release of not less than 4 years. A mandatory special assessment of $100 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of the plea.

5. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

(a) The United States Sentencing Guidelines (U.S.S.G.), November 1, 2018 manual, will determine the Defendant's guidelines range.

(b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes the facts set forth above in paragraph 3 and the provided discovery materials.

(c) Pursuant to U.S.S.G. § 2D1.1(c)(6), the base offense level is 28 because the drug quantity is at least 350 grams but less than 500 grams of methamphetamine.

(d) Pursuant to U.S.S.G. § 2D1.1(b)(1), increase by 2 levels because a dangerous weapon was possessed.

(e) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7. The Defendant will not file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2 or a departure motion pursuant to U.S.S.G. Chapter 5, Parts H or K. The Defendant also will not seek a sentence below the advisory sentencing guidelines range as determined by the Court at sentencing.

8. The Defendant waives the right to appeal the guilty plea, conviction, and sentence. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

9. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete and sign a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. The Defendant will not encumber, transfer, or dispose of any monies, property, or assets under the Defendant's custody or control without written approval from the United States Attorney's Office. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program,

regardless of whether the Court specifically directs participation or imposes a schedule of payments. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

10. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court.

11. If the Defendant violates any part of this Agreement or testifies contrary to the facts he admits in paragraph 3 of this Agreement, the United States may void this

Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

12. This document and the supplement contain the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

13. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

14. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

ROBERT M. DUNCAN, JR.
UNITED STATES ATTORNEY

Date: 12/11/18

By: _____
Lauren Tanner Bradley
Assistant United States Attorney

Date: 12/11/18

_____
Mark S. Lockwood, Jr.
Defendant

Date: 12/11/18

_____
Michael Curtis
Attorney for Defendant